UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                               Chapter 11

FR-AM Two LLC,                                        Case No. 23-73775-REG
432 FF&E Mezz LLC,                                    Case No. 23-73776-REG
432 FF&E LLC,                                         Case No. 23-73777-REG
FR-AM One LLC,                                        Case No. 23-73778-REG

                 Debtors.                    Jointly Administered
-------------------------------------------------------------x

### DEBTORS' SECOND REVISED JOINT AMENDED CHAPTER 11 LIQUIDATING PLAN

FR-AM Two LLC ("FR-AM Two"), 432 FF&E Mezz LLC ("432 Mezz"), FR-AM One LLC ("FR-AM One") and 432 FF&E LLC ("432 Owner")[1] (collectively, the "Debtors") hereby propose the following second revised joint amended Chapter 11 liquidating plan (the "Plan") pursuant to §1121(a) and other provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Overview of the Plan

The Debtors, which are special purpose entities all controlled by Harry Macklowe, in combination with each other, own three condominium apartments in the world-renowned residential condominium located at 432 Park Avenue, New York, NY (the "432 Park") identified as units 78B and 28H (owned by FR-AM One) and 78A (owned by 432 Owner) (collectively, the "Units"). The Units comprise a full floor of ultra luxurious living with majestic views. The Debtors funded the purchase of the Units with 100% financing provided by 56th and Park (NY) Owner, LLC ("Secured Lender"), and hoped to refinance the Units. The Debtors were unable to

---

[1] FR-AM One and 432 Owner are collectively referred to as the "Unit Owners".

do so, but following the filing of these cases the Debtors reached a settlement agreement with the Secured Lender (the "Lender Settlement") regarding the disposition of the Units and an exit strategy for the bankruptcy cases.

Based upon the Lender Settlement, the Debtors are now intent on selling the Units following confirmation of the Plan during the period ending no later than May 31, 2025.

At this point, the Debtors and Secured Lender are committed to obtaining the best possible price for the Units and have agreed to work together to reach this goal. The Plan requires an initial personal contribution of funds by Mr. Macklowe of $450,000 (the "Macklowe Contribution") to fund the payment of the Allowed Non-Lender Claims (as defined herein) and the U.S. Trustee fees, with the remaining portion to be utilized to pay (i) condominium charges for November, 2024 in the approximate amount of $31,000.00 (the "November Common Charges"); and (ii) prior accrued post-petition condominium charges, inclusive of attorney's fees, in the amount of $492,336.39 plus reasonable additional attorneys' fees incurred by the Condo Board between October, 2024 and the Effective Date which are deemed Allowed hereunder (the "Allowed Condo Board Administrative Claim"). The balance of the Claims, including the Class 1 Allowed Secured Lender Claim (deemed Allowed hereunder) and the Allowed Condo Board Class 2 Claim (reduced to and deemed Allowed hereunder in the sum of $497,095.54) and that portion of the Allowed Condo Board Administrative Claim not paid on the Effective Date (the "Remaining Condo Board Administrative Claim") will be paid in accordance with the provisions of the Plan set forth below.

### Lead-Up to the Bankruptcies

The Debtors' lead principal and manager, Harry Macklowe, was the original developer of 432 Park, first acquiring the site of the former Drake Hotel in 2006 for redevelopment purposes.

The site was acquired for $413 million with the intention of developing one of the most impressive residential buildings in the world. Thereafter, Mr. Macklowe and his affiliates purchased the surrounding townhouses and retail locations on 57th Street and undertook the development over the next several years. In 2010, Mr. Macklowe and his affiliates sold the entirety of their equity interests in the project to 56th and Park (NY) Holdings LLC ("Holdings"), an entity affiliated with CIM Group, L.P. ("CIM").

In 2012, Harry Macklowe and his former wife entered into separate contracts to buy the respective Units for the sums of $14,400,000 (78A) and $31,360,000 (78B). Mr. Macklowe subsequently closed on these acquisitions in 2022. In connection with the purchase of the Units, Mr. Macklowe organized the Debtors to become the respective equity holders and title holders to the Units, with the entire purchase price financed by Secured Lender, which was the owner of the Units, a subsidiary of Holdings, and an affiliate of CIM. Secured Lender made two mortgage loans in the original principal amounts of $155,000 and $345,000 (the "Mortgage Loans") secured by certain mortgages and assignments of leases and rents and security agreements and financing statements dated as of May 9, 2022 (the "Mortgages") made by FR-AM One and 432 Owner (the "Unit Owners") to Secured Lender. Secured Lender also made two mezzanine loans in the original principal amounts of $14,293,940.31 and $31,622,858.29 (the "Mezzanine Loans") secured by certain pledge and security agreements dated as of May 9, 2022 (the "Pledge Agreements"), made by FR-AM Two and 432 Mezz (the "Mezz Debtors") in favor of Secured Lender, and, among other things, pledging to Secured Lender 100% of the membership interests in FR-AM One and 432 Owner (the "Membership Interests"), respectively (the Mezzanine Loans and Mortgage Loans, together with the Mortgages, Pledge Agreements and all accompanying documents executed thereto, the "Loan Documents").

The Debtors ultimately defaulted under the Loan Documents, prompting the Secured Lender to seek to enforce its purported liens securing the Mezzanine Loans based upon the Pledge Agreements.  After Debtors' application to enjoin the foreclosure sale was denied by the New York State Supreme Court, each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases") on October 11, 2023 (the "Petition Date") in the United States Bankruptcy Court for the Eastern District of New York, Central Islip Division (the "Bankruptcy Court").  Shortly thereafter, the Secured Lender moved to dismiss the Chapter 11 Cases (the "Motion to Dismiss the Cases").  The Debtors opposed such motion and commenced an Adversary Proceeding (see Adv. Pro. No. 24-08001) (the "Adversary Proceeding") by filing a Complaint challenging the Secured Lender's secured status in bankruptcy based upon invocation of the Debtor's purported strong-arm powers (the "Complaint"). It was the Debtors' contention that the Pledge Agreements could be avoided by a debtor-in-possession in bankruptcy exercising its strong-arm powers.  The Secured Lender opposed the adversary proceeding by filing a motion to dismiss the Complaint (the "Motion to Dismiss the Adversary"), contending, among other things, that it properly perfected its security interest in the Membership Interests by filing UCC-1 financing statements.

After legal argument on the Motion to Dismiss the Cases and Motion to Dismiss the Adversary, the Debtors and Secured Lender finally reached the Lender Settlement in April of 2024, which the Bankruptcy Court approved by Order dated May 10, 2024 [ECF No. 76].[2] After the Bankruptcy Court approved the Lender Settlement, the Secured Lender's Motion to Dismiss the Cases was withdrawn by Order of the Bankruptcy Court [ECF No. 77]. On May 16, 2024, the Debtors withdrew their initial filed plan [ECF No. 78]. On May 8, 2024, the Secured Lender's

---

[2] The Lender Settlement is fully incorporated into the Plan, subject to certain amendments delineated herein. To the extent of any conflict, the terms of the Lender Settlement shall control.

motion to dismiss the Complaint was marked off as moot [ECF No. 12].  On May 20, 2024, the Debtors delivered to Secured Lender the certificates representing the Membership Interests.

The Plan fully incorporates the terms of the Secured Lender Settlement subject to certain agreed to amendments delineated herein. The Plan also now incorporates a settlement relating to the treatment and disposal of the Condo Board Class 2 Claims and the Allowed Condo Board Administrative Claim.  Notably, subject to the Debtors' and Mr. Macklowe's continuing compliance with the Secured Lender Settlement and the amendments thereto, the amendments (i) fix the Secured Lender's claim pursuant to the Secured Lender  Settlement at $ 57,126,843.31, foregoing the right to any additional legal fees incurred by the Secured Lender (the "Allowed Secured Lender Claim "), and (ii) extend the deadline to sell the Units to May 31, 2025, both subject to certain conditions provided herein.

Based upon the Lender Settlement, subject to the amendments provided herein, the Debtors withdrew their initial plan and filed a prior first revised plan to implement a sale of the Units,  (the "First Revised Plan").  The First Revised Plan has been further amended to incorporate the settlement reached with the Condo Board as provided below.  Specifically, the Condo Board filed an objection to confirmation of the First Revised Plan based on feasibility. Ultimately the Debtors, the Secured Lender and the Condo Board reached an agreement, the terms of which are reflected in this Plan, resolving the Condo Board objection by granting the Condo Board the Allowed Condo Board Administrative Claim and an Allowed class 2 Claim in the amount of $497,095.54 (the "Allowed Condo Board Class 2 Claim") each to be paid in accordance with the provisions of this Plan set forth below.

# ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1. "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the Chapter 11 cases allowed under §§ 503(b) and 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of maintaining and preserving the Units; and (b) compensation for the Debtors' legal counsel and professional advisors (the "<u>Professionals</u>") as allowed by the Bankruptcy Court.

1.2. "**Allowed Claim**" means a Claim timely filed before the Bar Date or which was scheduled by the Debtors without being designated as contingent, unliquidated or disputed, and in either case, a claim (a) as to which no objection has been filed within the time fixed by the Bankruptcy Court; (b) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (c) that is Allowed (i) by Final Order; or (ii) by an agreement between the creditor and the Debtors.

1.3. "**Allowed Condo Board Administrative Claim**" has the meaning set forth in the the Overview of the Plan section.

1.4. "**Allowed Condo Board Class 2 Claim**" has the meaning set forth in the final paragraph of the Overview of the Plan section.

1.5. "**Allowed Secured Lender Claim** " has the meaning set forth in the penultimate paragraph of the Overview of the Plan section.

1.6. "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.7. "**Bankruptcy Schedules**" means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information filed by each of the Debtors pursuant to Bankruptcy Rule 1007, as same may be amended or supplemented.

1.8. "**Bar Date**" means January 5, 2024, as the last date set by the Bankruptcy Court to file a Claim against the Debtors.

1.9. "**Broker**" means the person or firm engaged by the Debtors and approved by the Bankruptcy Court to market and sell the Units.

1.10. "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.11. "**Cash**" means on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction (other than as may be provided in this Plan or in the Confirmation Order) no later than the next Business Day.

1.12. "**Cause of Action**" means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suit damages, judgments, claims and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in law, equity, or otherwise.

1.13. "**Claim**" means a claim against one or more of the Debtors as defined in Bankruptcy Code § 101(5).

1.14. "**Claim Objection Deadline**" shall mean thirty (30) days after the Confirmation Date of the Plan.

1.15. "**Closing**" means the day when the Debtors consummate and close on the Sale of the Units pursuant to the Confirmation Order.

1.16. "**Condo Board**" means Residential Board of the 432 Park Avenue Condominium.

1.17. "**Confirmation**" means approval of the Plan by the Bankruptcy Court.

1.18. "**Confirmation Date**" means the date on which the Confirmation Order is entered.

1.19. "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider approval of the Plan.

1.20. "**Confirmation Order**" means the order of the Bankruptcy Court approving the Plan pursuant to Bankruptcy Code § 1129.

1.21. "**Creditor**" means the holder of a Claim against the Debtors.

1.22. "**Disbursing Agent**" means Goldberg Weprin Finkel Goldstein LLP for purposes of maintaining the funding of approximately $450,000 and any other amounts provided by Mr. Macklowe under the Plan, and distributing amounts thereunder including any Net Sale Proceeds as provided under the Plan.

1.23. "**Disputed Claim**" means: (a) any Claim that is listed in any of Debtors' schedules as being disputed, contingent or unliquidated with respect to which no Proof of Claim has been timely filed; and (b) any Claim with respect to which an objection to the allowance thereof, in whole or in part, has been interposed prior to the Claims Objection Deadline, and no final order has been entered resolving such objection.

1.24. "**Effective Date**" means the first business day after the Confirmation Order becomes a Final Order.

1.25. "**Final Order**" means an order of the Bankruptcy Court that has not been reversed, stayed, modified, or amended and as to which the time to appeal has expired, or if any appeal, has been sought, the order of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed from and the time to take any further appeal has expired.

1.26. "**Interest**" means any equity security (as such term is defined in section 101(16) of the Bankruptcy Code) of the Debtors, including all issued, unissued, authorized, or outstanding shares of capital stock and any other common stock, preferred stock, limited liability company interests, and any other equity, ownership or profits interests of the Debtors, in each case issued pursuant, and in connection with, Debtors' corporate governance documents, including all options, warrants, rights, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in the Debtors, whether or not arising under or in connection with any employment agreement, and whether or not certificated, transferable, preferred, common, voting, or denominated "stock," or similar security, that existed immediately before the Effective Date.

1.27. "**Net Sale Proceeds**" means the remaining Sale Proceeds after payment in cash, in full, of the Allowed Secured Lender Claims, the Remaining Condo Board Administrative Claim, the Allowed Class 2 Condo Board Claims and the closing costs of the Sale.

1.28. "**Non-Lender Claims**" means all Unsecured Claims other than the Allowed Secured Lender Claim s and the Class 2 Condo Board Claims.

1.29. "**November Common Charges**" has the meaning ascribed to it in the final paragraph of the Overview of the Plan section.

1.30. "**Petition Date**" means October 11, 2023, the date on which each of the voluntary petitions commencing these Chapter 11 cases were filed.

1.31. "**Plan Escrow**" means the escrow established by the Debtor with the Disbursing Agent initially funded with $450,000 contributed by Mr. Macklowe.

1.32. "**Priority Tax Claim**" means any Claims of a federal, state or local taxing authority for real estate taxes or related charges.

1.33. "**Professional Fee Claims**" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) for compensation for services rendered or reimbursement of expenses incurred by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

1.34. "**Proof of Claim**" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases by the applicable bar date.

1.35. "**Remaining Condo Board Administrative Claim**" shall have the meaning ascribed to it in the final paragraph of the Overview of the Plan section.

1.36. "**Reorganized Debtors**" means the Debtors following confirmation of the Plan.

1.37. "**Sale**" means the sale of the Units pursuant to the Confirmation Order.

1.38. "**Sale Proceeds**" means the cash proceeds, if any, generated from a Sale of the Units.

1.39. "**Secured Claim**" means a Claim secured by a lien, mortgage or security interest on the Units or Membership Interests.

1.40. "**Transfer Taxes**" means, without limitation, (a) New York City and New York State or other applicable local real property deed and transfer taxes and (b) and any and all other stamp taxes or similar taxes, which are exempt pursuant to § 1146(a) of the Bankruptcy Code, based upon a transfer of the Units or a transfer of the equity of the Unit Owners made in accordance with, pursuant to, or in furtherance of the Plan.

1.41. "**Unsecured Claim**" means a general unsecured claim arising prior to the Petition Date not entitled to priority in bankruptcy or otherwise secured by property of the Debtors.

1.42. "**Unsecured Creditor**" means the holder of an Unsecured Claim.

1.43. "**U.S. Trustee Fees**" means fees payable pursuant to 28 U.S.C. § 1930, together with any statutory interest.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Claims and Interests as defined by the Plan hereunder are classified as follows:

**Class 1** – Allowed Secured Claims of the Secured Lender.

**Class 2** – Allowed Condo Board Class 2 Claim.

**Class 3** – Allowed General Unsecured Claims.

**Class 4** – The Equity Interests of the Debtors and Reorganized Debtors.

## ARTICLE III

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims or U.S. Trustee Fees, all of which shall be paid in full as required by 11 U.S.C. §1129(a)(9). Mr. Macklowe shall personally contribute funds sufficient to pay all such allowed claims in full, in cash, and provide such funds to the Disbursing Agent.

3.1.    **Administrative Expense Claims**.  Administrative Expense Claims consist of any unpaid fees, costs and expenses incurred by the Debtors, or Reorganized Debtors, as applicable, in maintaining the Units during the Chapter 11 Cases.  Except as otherwise provided herein, Administrative Expense Claims, including the Allowed Condo Board Administrative Claim shall be paid by the Disbursing Agent from funds personally contributed by Mr. Macklowe as and when due.    The Debtors currently lack the capacity to pay the Allowed Condo Board Administrative Claim in full on the Effective Date.   Pursuant to an agreement amongst the Debtors, the Secured Lender and the Condo Board, the Disbursing Agent on the Effective Date will pay the Condo Board's counsel on behalf of the Debtors from the Plan Escrow the sum of

approximately $381,000 in full satisfaction of the November Common Charges and in partial satisfaction of the Allowed Condo Board Administrative Claim.  The Remaining Condo Board Administrative Claim shall be paid either from Sale Proceeds or by the Lender as set forth hereafter.

3.2.    **Professional Fee Claims**.  All requests for allowance of Professional Fee Claims shall be filed no later than thirty (30) days prior to the Effective Date in accordance with 11 U.S.C. §330.  After notice and a hearing, the allowed amounts of such Professional Fee Claims shall be paid upon entry of an appropriate Order of the Bankruptcy Court approving the same from (i) Net Sale Proceeds, if any, or (ii) Mr. Macklowe.

3.3.    **Priority Tax Claims**.  Any outstanding real estate tax claims relating to the Units shall be treated as Allowed Priority Tax Claims for purposes of the Plan.  Accordingly, such Priority Tax Claims shall also be paid in full on the Effective Date by the Disbursing Agent from funds personally contributed by Mr. Macklowe.

3.4.    **U.S. Trustee Fees**.  To the extent not otherwise paid, all accrued U.S. Trustee Fees, together with any interest thereon, until the Chapter 11 Cases are closed by entry of an order or final decree (a "Final Decree"), shall be paid by the Disbursing Agent from funds personally contributed by Mr. Macklowe.

## ARTICLE IV

## CLASSIFICATION AND TREATMENT OF CLAIMS

The Plan classifies Claims and Interests against the Debtors consistent with the applicable provisions of the Bankruptcy Code.  Aside from the Class 1 Secured Claims of the Secured Lender, which are impaired and entitled to vote, all other classes of Claims are unimpaired and not entitled to vote on the Plan.

4.1.  **Summary**.  The categories listed below classify Claims and Interests against the Debtors for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| Class 1 | Secured Claims of the Secured Lender | Yes | Yes |
| Class 2 | Claims of the Condo Board | Yes | Yes |
| Class 3 | General Unsecured Claims | No | No |
| Class 4 | Equity Interests | No | No |

### Class 1: The Secured Claims of the Secured Lender

4.2.  **Classification** – Class 1 consists of the Allowed Secured Lender Claim.

**Treatment** – **The Secured Claims**. The terms of the Lender Settlement are fully incorporated into the Plan. The Allowed Secured Lender Claims shall be either (1) paid in full in cash to Secured Lender, at latest, on or prior to May 31, 2025 from the Sale Proceeds, or (2) Secured Lender shall acquire the Units though a credit bid of the amounts owed to Secured Lender on account of the Allowed Secured Lender Claim.

If the Debtors, or Reorganized Debtors, as applicable, default under the Lender Settlement as incorporated under this Plan, including by failing to pay when due,  (1) the Allowed Secured Lender Claims or (2) any post confirmation amounts due to the Condo Board, then Secured Lender is entitled certain rights and remedies under the Plan, including the automatic assignment and transfer of the Membership Interests to the Secured Lender.

**Voting** – The Secured Lender is impaired under the Plan, although by virtue of the Lender Settlement, the Secured Lender is anticipated to support the Plan and vote affirmatively.

### Class 2: The Claims of the Condo Board

4.3.  **Classification** - Class 2 consists of the Allowed Condo Board Class 2 Claim.

**Treatment** – The Class 2 claims of the Condo Board primarily consist of special assessments levied against the Unit Owners for legal fees associated with litigation against the sponsor.  Pursuant to the settlement among the Debtors, the Secured Lender and the Condo Board embodied and incorporated into the terms of the Plan:

(1)     The Allowed Condo Board Class 2 Claim is hereby deemed an Allowed Claim in the amount of $497,995.54 not subject to objection, setoff or recoupment;

(2)     The Allowed Condo Board Class 2 Claim and the Remaining Condo Board Administrative Claim shall be paid in full from Sale Proceeds either (a) at the closing of the sale of one or more of the Units sold to a third party or third parties by the Debtors; or (b) at a closing of the sale of one or more of the Units by the Secured Lender  (or any of its affiliates or designees) to a third party or parties, provided, however, that the Secured Lender hereby agrees that the closing of such a sale to a third party by the Secured Lender (or any of its affiliates or designees) must take place on or before December 31, 2025 (the "Lender Sale Deadline").  In the event that (1) the sale of one or more of the Units does not close by the Lender Sale Deadline; (2) the Lender sells or otherwise transfers the Units and the Allowed Condo Board Class 2 Claim and the Remaining Condo Board Administrative Claim are not paid in full from Sale Proceeds; or (3) the Lender receive Membership Interests in the Debtors but does not sell or otherwise transfer the Units prior to the Lender Sale Deadline in a transaction which would result in the full payment of the Allowed Condo Board Class 2 Claim and the Remaining Condo Board Administrative Claim, then the Secured Lender shall pay the Condo Board, in Cash, such sum that will result in the Allowed Condo Board Class 2 Claim and the Remaining Condo Board

Administrative Claim being paid in full within ten (10) days of the Lender Sale Deadline.

(3)     Until the Allowed Condo Board Class 2 Claim and the Remaining Condo Board Administrative Claim are each paid in full, the Condo Board shall have a lien on each of the Units for the full amount of the Allowed Condo Board Class 2 Claim and the Remaining Condo Board Administrative Claim, without necessity of any further documentation, filing or other action of the Condo Board and shall retain all of its statutory or condominium lien rights, with enforcement thereof to be pursued, if necessary, in the state or federal courts.

## Class 3: General Unsecured Claims

4.4.    **Classification** – Class 3 consists of General Unsecured Claims.

**Treatment** – The holders of Allowed Class 3 General Unsecured Claims shall be paid 100% of their Allowed claims (currently projected to be approximately $21,000) from the Plan Escrow upon the later of twenty-one (21) days after entry of the Confirmation Order (deposited in escrow prior to confirmation), or seven (7) days after entry of a Final Order allowing said claims.

## Class 4:  Equity Interest Holders

4.5.    **Classification** – Class 4 consists of the membership interests of the Debtors' interest holders.

**Treatment** – All existing pre-petition equity interests in the Debtors shall continue to be held by the Mezzanine Debtors or Harry Macklowe (as applicable) directly or as trustee in the Reorganized Debtors, in exchange for his personal contributions under the Plan, subject to the terms of the Lender Settlement, including, without limitation, the automatic

assignment and transfer of the Membership Interests to the Secured Lender upon default as provided under such agreements.  Following the sale of the Units, any Net Sale Proceeds shall be distributed to the equity interest holders in accordance with the applicable operating agreements.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1.    **Mr. Macklowe's Contribution**. Prior to the Confirmation Date, Mr. Macklowe personally contributed $450,000 to be held in the Plan Escrow with the Disbursing Agent to secure partial payment of the Allowed Condo Board Administrative Claims, and full payment of the Allowed Class 3 Claims and US Trustee Fees.   Further, Mr. Macklowe shall personally contribute funds to the Debtors, or Reorganized Debtors, as applicable, in amounts sufficient to secure the payment of any and all other remaining costs and expenses of the Debtors in these Chapter 11 Cases on a post-confirmation basis, including, but not limited to, post-Effective Date ongoing Condo Board monthly charges and fees.  The Remaining Condo Board Administrative Claim, the Allowed Secured Lender Claim and the Allowed Condo Board Class 2 Claim Administrative Claim will be paid by the transfer of the Units consistent with the terms of the Plan.   Non-payment of monthly Condo Board fees and charges is a default under the Lender Settlement and a default under the Plan, subject to written notice of same and a ten (10) day cure requirement (the "Cure Period").  If such default remains uncured by the expiration of the Cure Period, the Membership Interests shall transfer automatically to Secured Lender.  Additionally, any failure to pay the Allowed Secured Lender Claim by May 31, 2025 shall be a default under the Lender Settlement and a default under the Plan, resulting in the automatic transfer of the Membership Interests to the Secured Lender effective June 1, 2025, without the requirement of any notice or cure obligation.    Finally, as provided herein, and as agreed to by counsel to

Debtors, Allowed Professional Fee Claims shall be paid by the Disbursing Agent upon entry of an appropriate Order of the Bankruptcy Court awarding the same from (i) Net Sale Proceeds, if any, or (ii) by personal contributions from Mr. Macklowe.

5.2. **Time to File Objections to Claims**. Any objections to Claims shall be filed by the Debtors, or the Reorganized Debtors, as applicable, on or before the Claim Objection Deadline.

5.3. **Amendments to Lender Settlement**. The Plan incorporates the following amendments to the Lender Settlement:

- Mr. Macklowe shall cause the Debtors, or Reorganized Debtors, as applicable, to use their commercially reasonable efforts to market and sell the Units on commercially reasonable terms.

- The Debtors have exercised the Option to extend the deadline for the sale or refinancing of the Units until May 31, 2025, subject to continued compliance during the extension period with the terms and obligations contained in the Lender Settlement and the Bankruptcy Court's order approving the same. The May 31, 2025 deadline may not be extended unless agreed to in writing by both the Lender and the Condo Board.

- No further interest shall accrue on the Mortgage Loans and Mezzanine Loans for the time period from November 1, 2024, to May 31, 2025.

- In the absence of a default under the Lender Settlement, Secured Lender shall not apply for any further attorneys' fees above any amount originally included in the Allowed Secured Lender Claims.

- Mr. Macklowe shall provide Secured Lender with updates on the status of efforts to market and sell the Units upon reasonable request by the Secured Lender and its affiliates, but at minimum shall share all offers and counter-offers for the Units.

- Other than as explicitly amended herein, the Lender Settlement and the Bankruptcy Court's order approving the Lender Settlement, shall remain in full force and effect.

5.4. **The Unit Disposition.** The Plan shall otherwise be partially implemented and funded through a Sale of the Units resulting in full payment of the Allowed Secured Lender Claims or acquisition of the Units by the Secured Lender pursuant to its credit bid rights. A Sale of the Units shall occur no later than May 31, 2025, subject to the conditions as further described herein and in the Lender Settlement. The Debtors reserve the right to effectuate a private sale (so

long as such private sale will generate sufficient proceeds to pay the Secured Lender and the Condo Board in full) or public auction sale of the Units pursuant to the terms of bid procedures that are consistent with this Plan and the herein incorporated Lender Settlement, and to be submitted to the Court for approval promptly after the Confirmation Date, as may be applicable or warranted.  On July 16, 2024, the Debtors submitted an application to retain Corcoran Group as real estate broker for the marketing and sale of the Units [ECF No. 91], and on July 22, 2024, the Court entered an Order authorizing such retention [ECF No. 93].

      5.5.    **<u>Provisions Relating to a Sale Process</u>.**

    (a)    **Minimum Sale Price.**  Any sale, transfer or conveyance of the Units must be in an amount sufficient to pay the Allowed Lender Secured Claim, the Allowed Condo Bard Class 2 Claim, and the Remaining Condo Board Administrative Claim in full from the Sale Proceeds.

    (b)    **Free and Clear Sale**.  Any sale, transfer and conveyance of the Units to the person making the high and best offer (the "<u>High Bidder</u>") shall be effectuated by Warranty Deed and Assignment of Leases and Rents for each of the Units, free and clear of all Liens, Claims, Taxes and Interests pursuant to 11. U.S.C. §§ 363(b) and (f) and 1123(a)(5), with such Liens, Claims, Taxes and Interests to attach to the proceeds of the sale.  The High Bidder may include the Secured Lender.

    (c)    **Secured Lender's Credit Bid Rights**. Any sale process with regards to the Units shall recognize the rights of the Secured Lender (or its designee) to credit bid up to the full amount of the Allowed Lender Secured Claim at such sale under 11 U.S.C. § 363(k) and payment of the Allowed Condo Board Class 2 Claim and Remaining Condo Board Administrative Claim, except if the Debtors obtain an independent third party private sale contract which enables the Debtors to pay the Allowed Secured Lender Claim, the Allowed Condo Board Class 2 Claim, and the Remaining Condo Board Administrative Claim in full at closing or in conjunction with other funds on or before the Revised Maturity Date.

    (d)    **Sale Approval Order**.  Any Sale to the High Bidder shall be subject to approval of the Bankruptcy Court under 11 U.S.C. § 363(b).

    (e)    **Deadline to Close**.  Any Sale shall close no later than May 31, 2025.

    (f)    **Transfer of Assets**.  The Units shall remain in the Debtor's Estates under § 541(a) of the Bankruptcy Code until the Closing of the Sale, subject to

the Secured Lender's rights to the automatic assignment and transfer of the Membership Interests to the Secured Lender upon a breach of the terms of the Lender Settlement or this Plan.  At Closing, the Units shall be transferred and conveyed to the High Bidder free and clear of all liens, claims and interests other than permitted encumbrances with such Liens, Claims, Taxes and Interests to attach to the proceeds of the sale.  The Confirmation Order shall contain appropriate provisions authorizing and directing the Debtors acting by and through Harry Macklowe to execute or deliver, or to join in the execution or delivery, on the Closing of all conventional conveying documents and instruments, including, but not limited to, a Warranty Deed and Assignment of Leases and Rents, required to effect a transfer of real property in New York City and to perform any act that is necessary for the consummation of the Plan.

(g)     **Distribution of Third-Party Sale Proceeds**.  The Sale Proceeds realized from the sale of the Units, if any, shall be distributed first to the Secured Lender, in the amount of $607,734.98, representing the balance of its Claim in connection with the Mortgage Loans; second to the Condo Board in the amount of the Remaining Condo Board Administrative Claim and the Allowed Condo Board Class 2 Claim; and third, to the Lender in the amount of $56,519,108.32, representing the amount of its Allowed Claims in connection with the Mezzanine Loans, in accordance with their respective priorities and the  provisions of Article IV of the Plan, until the Allowed Claims of the Condo Board and the Secured Lender are paid in full, and thereafter in accordance with priority scheme set forth in the Bankruptcy Code and this Plan.

5.6.    **Transfer Taxes**.  Either the sale of the Units, or the automatic assignment and transfer of the Membership Interests to the Secured Lender upon a post-confirmation default under the Lender Settlement and this Plan, constitutes the issuance, transfer, or exchange of a security, or making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under this Plan, including an issuance of a Warranty Deed and Assignment of Leases and Rents executed by the Debtors or the automatic assignment and transfer of the Membership Interests to the Secured Lender, shall not be subject under any law imposing a stamp tax, real estate transfer tax or similar tax (previously defined as the "Transfer Taxes").

Accordingly, the appropriate officials or agents of state or local governmental unit, including New York State and the City Register for the County of New York, shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

5.7. **Waiver/Release of Causes of Action.**  All claims, causes of action, damages or remedies in favor of the Debtors' respective estates relating to any prior transactions (including all avoidance claims under the Bankruptcy Code or state law) are hereby waived by the Debtors and their respective estates.

5.8. **Post-Confirmation Stays/Injunctions.**  Subject to the Secured Lender's rightful exercise of its rights and remedies under the Lender Settlement, including, without limitation, the Secured Lender's entitlement under the Lender Settlement to all remedies provided therein, including the automatic assignment and transfer of the Membership Interests to Secured Lender, all stays pursuant to Section 362 of the Bankruptcy Code shall remain in full force and effect until the close of the bankruptcy case and entry of a Final Decree.

5.9. **Injunction against Interference with the Plan.**  Except as otherwise provided herein, and until the Sale of the Units, and payment in full, in cash, of all Allowed Claims, the entry of the Confirmation Order shall stay, restrain and enjoin on and after the Confirmation Date: (a) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from any property of the Debtors' respective estates, including the Units; or (b) the creation, perfection or enforcement of any lien or encumbrance against any property of the Debtors' estates, including the Units.  Since this Plan provides for the liquidation of all or substantially all of the property of the Debtors' estates, the confirmation of the Plan will not result in a permanent discharge of the Debtors' pre-petition

obligations and claims. Upon entry of the Confirmation Order, all holders of Claims against or interests in the Debtors and other parties in interest, and any other person with notice (actual or constructive) of the Confirmation Order shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan, including the Sale of the Units, and the payment in full, in cash, of all Allowed Claims.

## ARTICLE VI

## EXECUTORY CONTRACTS

6.1     **Potential Assumption of Executory Contracts**.  The Debtors are not parties to any executory or unexpired contracts.  However, out of an abundance of caution, any unexpired contract shall be deemed assumed on the Effective Date, with the amount of a cure to be satisfied from a personal contribution of funds by Mr. Macklowe.

## ARTICLE VII

## RETENTION OF JURISDICTION

7.1     **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction to consider the following matters after Confirmation of the Plan:

(a)     To enforce, implement or interpret the Lender Settlement;

(b)     To enforce, implement, interpret or modify the Plan under applicable provisions of the Bankruptcy Code;

(c)     To ensure that the Plan is fully consummated, and to enter Final Decrees in these Chapter 11 Cases;

(d)     To allow, disallow, determine, liquidate or classify any Claims and Administrative Expenses, including any dispute relating to the sale of the Units.

(e)    To consider applications filed by Professionals for final compensation and reimbursement of expenses; and

(f)    To resolve any motions, adversary proceedings or applications pending on the Effective Date.

(g)    To adjudicate any matter, dispute or controversy relating to the sale of the Units.

## ARTICLE VIII

## GENERAL PROVISIONS

8.1.    **Headings**.  The headings in the Plan are for reference purposes only.

8.2.    **Contents of Confirmation Order**.  The Confirmation Order may contain various provisions as may be necessary to modify, implement or enforce the Plan.

8.3.    **No Payment of Disputed Claims**.  The Plan contemplates the payment of Allowed Claims only.  No distributions shall be made on account of any Disputed Claim(s), until such Disputed Claim(s), or any part thereof, becomes an Allowed Claim in whole or in part, with the Debtors to promptly file objections to the Condo Boards claims prior to confirmation.

8.4.    **Modification of the Plan.**  The Plan may be altered, amended or modified by the Debtors at any time before substantial consummation thereof in accordance with the Bankruptcy Code only with the written agreement of the Condo Board and the Secured Lender.

8.5.    **Quarterly Fees**.  All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by personal contribution of Mr. Macklowe until the earlier of the conversion or dismissal of these Chapter 11 Cases under 11 U.S.C. §1112 of the Bankruptcy Code, or the closing of the Chapter 11 Cases under 11 U.S.C. §350(a).

8.6.    **Post-Confirmation Reports**.  The Debtors shall file quarterly status reports until the Chapter 11 cases are closed.

8.7. **Closing the Case**. Within fourteen (14) days following the full and final administration of the Chapter 11 Cases, the Debtors shall file on notice to the United States Trustee, an application and proposed Orders for a Final Decree.


Dated: New York, NY
  November 4_, 2024

FR-AM One LLC                          Goldberg Weprin Finkel Goldstein LLP
FR-AM Two LLC                          125 Park Avenue, 12th Floor
432 FF&E LLC                           New York, NY 10017
432 FF&E Mezz LLC                      (212) 221-5700

By:    /s/ Harry Macklowe              By:    /s/ Kevin J. Nash, Esq.
       Name: Harry Macklowe                   Kevin J. Nash
       Title:  Manager                        Member